The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) CHAPTER 13 |
| | ) |
| LINDA K. BURRAGE, | ) CASE NO. 03-66692 |
| | ) |
| Debtor. | ) ADV. NO. 08-6091 |
| | ) |
| ——————————————— | ) |
| | ) JUDGE RUSS KENDIG |
| LINDA K. BURRAGE, | ) |
| | ) |
| Debtor, | ) |
| | ) |
| v. | ) |
| | ) |
| HOMECOMINGS FINANCIAL | ) |
| NETWORK, INC. et al., | ) |
| | ) |
| Defendants. | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND

On October 18, 2007, the Court entered an order deeming debtor Linda K. Burrage's ("Ms. Burrage's") mortgage current in Ms. Burrage's main case. On August 6, 2008, Ms. Burrage filed the complaint that initiated this adversary proceeding. The complaint alleges that defendants Homecomings Financial Network, Inc. and Bank One/JP Morgan Chase, Inc. ("defendants") attempted to collect past due mortgage payments in contempt of the Court's order.[1]

Deborah L. Mack was Ms. Burrage's attorney at the time that the complaint was filed. On April 1, 2009, attorney Mack filed a motion to withdraw as counsel. The basis for the request was a letter written by Ms. Burrage that was critical of attorney Mack's services. On April 30, 2009, the Court granted the motion.

Ms. Burrage's next attorney was Morris H. Laatsch. According to attorney Laatsch's motion to withdraw, filed on October 6, 2009, he believed that he was authorized to submit a settlement offer on behalf of Ms. Burrage. According to the motion, he presented the proposal to the defendants. However, before the defendants could respond to the proposal, Ms. Burrage withdrew the offer. The Court granted attorney Laatsch's motion to withdraw on November 20, 2009.

Ms. Burrage's next attorney was JoAnne P. Hoard. On June 1, 2010, attorney Hoard filed her motion to withdraw. In support of her motion, attorney Hoard stated that "Burrage repeatedly changes her mind regarding settlement/evidentiary issues for trial and refuses to cooperate regarding legal and professional issues." On August 13, 2010, the Court granted attorney Hoard's motion. Since this date, Ms. Burrage has represented herself.

A trial date was scheduled in this matter for October 7, 2010. However, on October 4, 2010, defendants' counsel, John Sechler ("Mr. Sechler") called to inform the Court that the parties had settled. Per the Court's usual procedure, the trial was removed from the docket. On October 5, 2010, Ms. Burrage called the Court. She stated that she wanted to go forward with the hearing. She verified that there had been an oral settlement but stated that the parties had not memorialized it in writing. She also stated that she now disagreed with the terms of the oral settlement. Because Ms. Burrage stated that there had been a settlement, the Court did not re-set the hearing. Instead, the Court gave the parties 14 days to submit a written settlement agreement. However, no written agreement was ever submitted.

As a result, on January 6, 2011, the Court held an evidentiary hearing for the purposes of determining (1) whether the parties had reached an enforceable settlement in this matter and (2)

---

[1]The complaint contains many alternative theories of liability. However, a full description of the complaint is not necessary for the purposes of this opinion, which only addresses whether there was a settlement.

if so, the terms of the settlement. At the hearing, Ms. Burrage represented herself, and Mr. Sechler represented the defendants. Both Ms. Burrage and Mr. Sechler testified and were the only witnesses.

Mr. Sechler testified that he called Ms. Burrage on October 3, 2010 and asked her to make a settlement demand. Ms. Burrage obliged. She offered to dismiss the case with prejudice in exchange for a $10,000 credit on her mortgage account, a direct payment of $7,000 and the removal of all late charges from her mortgage account. Defendants told Mr. Sechler that the offer was acceptable on the same day and, on the morning of October 4, 2010, Mr. Sechler left Ms. Burrage a voice mail accepting the offer.

Mr. Sechler testified that he forwarded Ms. Burrage a written settlement agreement sometime shortly after October 5, 2010, attached to this opinion as Exhibit A. The settlement agreement included the terms discussed during the October 3 phone call. In addition, it contained a number of boilerplate provisions. Ms. Burrage did not sign the written settlement agreement. Instead, she sent back a heavily redlined and edited copy.

Mr. Sechler testified that, on December 10, 2010, Pam Foster, who is identified in Court documents as a housing advocate, called Mr. Sechler to arrange a further meeting with Ms. Burrage. This meeting took place on December 14, 2010. At the meeting, Ms. Burrage increased her demands from the October 3 telephone conversation. She demanded a direct payment of $10,000 instead of $7,000. She also demanded that defendants pay for all of her attorney fees and demanded that defendants pay taxes on the settlement amount. Defendants did not agree to these changes.

The parties also discussed the boilerplate provisions. They agreed that paragraphs 4, 6, 10, 11, 13, 14, 15, 16, 17, 18 and 19 were unobjectionable. They also agreed to the following changes: (1) including the new unpaid principal balance as a result of the settlement in paragraph 2(a)(i); (2) changing paragraph 2(a)(iii) to deem the loan current as of January 2011; (3) adding a phrase to paragraph 2(a)(iii) confirming that the maturity date of Ms. Burrage's loan will not change as a result of the settlement; (4) removing paragraph 5 in its entirely; (5) revising paragraph 8 so that Ms. Burrage would be able to discuss possible malpractice actions against her prior attorneys; (6) changing the time frame in paragraph 9 from 180 days to 30 days and (7) truncating paragraph 12 to end after the first use of the word "Agreement."

Ms. Burrage's testimony was somewhat disjointed. She did not deny the substance of Mr. Sechler's testimony, except to claim that she never received the October 4, 2010 voice mail. She testified that she had spoken to an accountant who estimated her damages in the range of $10,000, although she didn't know how he came up with that number. She testified that numerous friends and acquaintances urged her to "work out the bugs" and settle the matter but that she was too upset to do so. At several points in her testimony, she characterized Mr. Sechler and the defendants as "devious and deceitful."

3

After the closing of testimony, the Court announced and then entered a scheduling order allowing to the parties to file additional briefs and providing that the Court would decide the matter without further notice or hearing once briefs were filed. Briefs have been filed and this is the Court's decision.

## FINDINGS OF FACT

The Court accepts the testimony of Mr. Sechler as an accurate account of the events that occured between the parties for five reasons. First, his demeanor at hearing was credible. Second, *ad personam* attacks notwithstanding, Ms. Burrage did not deny the substance of most of his testimony. Ms Burrage was generally credible as well, but has obviously suffered great emotional distress as a result of this experience. This hindered her ability to recall and tell her side of the story. In the end, her testimony was not at odds with Mr. Sechler's as to the material elements of agreed to consideration.

Third, the Court regards the parties' agreement as very favorable to Ms. Burrage, which increases the probability that she agreed to it. Fourth, the motions to withdraw filed by Ms. Burrage's prior attorneys state that Ms. Burrage agreed to settlement terms and then backpedaled, which suggests that she is doing the same thing here. Fifth, Ms. Burrage contacted chambers on October 5, 2010, and specifically, repeatedly verified that there was a settlement but that it had not been reduced to writing and she did not agree with the written document she received. These conclusions are cumulative, and the absence of any number less than all of them would not alter the sufficiency of the proof.

## LAW AND ANALYSIS

A settlement agreement is a contract, and, as such, must meet the essential requirements of contract formation: offer, acceptance and consideration. Marshall v. Beach, 758 N.E.2d 247, 251 (Ohio App. 2001). Oral contracts are binding if the proponent of the oral contract can prove that the essential elements of contract formation are present. Helle v. Landmark, Inc., 472 N.E.2d 765, 773 (Ohio App. 1984).

"In addition to a meeting of the minds, a contract must also be definite and certain with respect to its essential terms." Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indust. Relations, 575 N.E.2d 134, 137 (Ohio 1991). "The terms of a contract are sufficiently certain if they provide a basis for for determining the existence of a breach and for giving an appropriate remedy." Nilavar v. Osborn, 711 N.E.2d 726, 734 (Ohio App. 1998). "Essential terms include such things as the identity of the parties to the contract, the subject matter of the contract, and consideration." McMillan v. Hauter, 1999 Ohio App. Lexis 1273, *11 (1999). "[I]f the court can determine that the parties intended to be bound, it may fashion those less essential terms that were omitted in order to reach a just and fair result." Gurich v. Janson, 2000 Ohio App. LEXIS 5369, *12 (Ohio App. 2000).

4

The Court concludes that the parties' conduct on October 3 and 4, 2010 formed a valid, enforceable oral contract. All three essential elements of contract formation were present. Ms. Burrage offered to accept $10,000 in account credit, a direct payment of $7,000 and the removal of all late fees from her account. As is customary in the American legal system, dollar amounts are gross numbers and Ms. Burrage did not ask for attorney fees or the payment of taxes on the settlement amount. Mr. Sechler accepted this offer on behalf of defendants by voice mail the following morning. As consideration, Ms. Burrage agreed to dismiss this adversary proceeding with prejudice. Furthermore, the contract was sufficiently definite with regard to its essential terms. The details the parties left out were boilerplate or necessary implied terms. As such, the Court finds that the parties have reached an enforceable settlement in this matter.

Having found that the parties have agreed to essential terms, the Court must now "fashion those less essential terms that were omitted to reach a just and fair result." Id. As described in Mr. Sechler's testimony, the parties reached at least a tentative agreement regarding the language of the boilerplate provisions on December 14, 2010. Because this discussion is the Court's only insight into the intent of the parties, the Court adopts the boilerplate and implied provisions as described in Mr. Sechler's testimony, except that the Court will not attempt to calculate the account's new principal balance and the failure of purpose clause has been deleted because it no longer needed. Furthermore, the release provisions of the settlement shall be deemed to extend through February 11, 2011 for all matters relating to Adv. No. 08-6091.

Exhibit B to this opinion is the settlement agreement in Exhibit A modified to incorporate Ms. Burrage's required changes. Exhibit C to this opinion makes necessary edits to Exhibit B and displays the edits. Exhibit D to this opinion and the order accompanying this opinion shall be deemed the parties' settlement agreement.

An order will issue with this opinion.

#     #     #

Service List:

Linda K. Burrage
320 Home Ave.
Mansfield, OH 44902

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

5

Joel Everett Sechler
Carpenter & Lipps, LLP
280 North High Street
280 Plaza Suite 1300
Columbus, OH 43215

6



EXHIBIT

A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between the Parties on the Date of Agreement, both as defined herein, and subject to the terms as follows:

### Definitions

**Date of Agreement**:    October __, 2010

**Parties**:    **HFN**:    Homecomings Financial, LLC

        **GMACM**    GMAC Mortgage, LLC

        **JPM**:    JP Morgan Chase smb Bank One, NA

        **Claimant**:    Linda K. Burrage

Unless otherwise expressly provided, the Claimant listed above shall be referred to as "Claimant." Unless otherwise expressly provided, HFN, GMACM and JPM shall be collectively referred to as "Defendants." The Claimant and the Defendants shall be collectively referred to as the "Parties."

**Releasor**: Claimant and her present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through her.

**Releasees**: Defendants and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf.

### Recitals

A.    Claimant has a mortgage loan (the "Loan") serviced previously by HFN and currently by GMACM on real property located at 302 Home Avenue, Mansfield, Ohio 44902 (the "Property").

B.    On August 6, 2008, Claimant initiated an adversary proceeding regarding the Loan and the Property against HFN and JPM in the United States Bankruptcy Court, Northern District of Ohio, Case No. 08-60915 (the "Action").

1

C.    In order to avoid the cost and uncertainty of further litigation and trial, the Parties desire to compromise and settle the Action, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Action, the Loan, and the Property.

D.    In consideration of the covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed to among the Parties as follows:

## TERMS

1.    Recitals. The Recitals set forth above are incorporated herein by reference and are made a part of this Agreement.

2.    Settlement Consideration.

    a.  Defendants shall:

        i.  Provide Claimant with a $10,000 credit on the outstanding principal balance of the Loan;

        ii.  Provide Claimant a check in the amount of $7,000 upon receipt of an executed W-9 form from Claimant;

        iii.  Remove all outstanding charges on the Loan, other than principal, interest and escrow charges accruing and due and owing for October 2010 and thereafter, and deem the Loan current as of September 30, 2010; and

        iv.  Amend Claimant's credit report to reflect Claimant was current at the time of discharge and for all subsequent months for which Claimant was current, but not shown to be current, and provide Claimant a letter confirming same.

    b.  Claimant shall:

        i.  Release Defendants as provided for in Paragraph 3;

        ii.  Dismiss with prejudice the Action by signing a stipulation of dismissal, with each party to bear its own costs and attorney fees.

3.    Releases.  Releasor, hereby unconditionally and irrevocably remise, release and forever discharge Releasees from any and all claims, counterclaims, actions,

2

causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Loan, the Property, and the Action and/or the servicing or administration of such Loan that may be pending or that may be satisfied.

NOTWITHSTANDING THE ABOVE, THE PARTIES AGREE TO THE FOLLOWING RESERVATIONS AND EXCLUSIONS TO THE RELEASE.

Nothing in this Agreement shall be interpreted to apply to (a) claims arising out of the failure of the Parties to perform in conformity with the terms of this Agreement; (b) any future disputes between the Parties which arise out of any business transactions between the Parties including the Loan; and (c) extend the releases and discharges derivative from this Agreement to any business transaction or any such relationship of any kind whatsoever other than the Loan, the Property, and the Action as defined herein whether involving any of the businesses or individuals defined as Releasor and Releasees or any one of such defined classes of persons or business entities.

4.      Covenant Not to Sue.  The Parties covenant not to sue, institute, cause to be instituted, permit to be instituted on his/her/their/its behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any claim against the respective Releasor and Releasees that is covered by this Agreement.

5.      Attorney Lien Release.  Any attorney signatory to this Agreement releases any and all attorney liens and claims for any fees and costs against the Releasees regarding the Loan or Action as applicable and by signing this Agreement so releases such lien right and claim.

6.      Transactional Release.  To the extent any claims arise in connection with entering into this Agreement, Releasor agrees to waive and release those claims, including, but not limited to, claims arising under Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Home

3

Ownership and Equity Protection Act (HOEPA), and/or any state lending laws and regulations in consideration for the execution of this Agreement.

7.    Tax Indemnity.  The Agreement is enforceable regardless of the taxability of the Settlement Consideration as set forth above at Paragraph 2 or any portion thereof. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to be solely responsible for the taxes, interest, and penalties due and owing, if any, should the Settlement Consideration, or any portion thereof, be determined as taxable and the Party or Parties receiving the taxable benefit of the Settlement Consideration fails or Plaintiffs are alleged to have failed to pay any such taxes. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to indemnify Defendants if Defendants are required to pay any taxes, interest, or penalties owed by the Party or Parties receiving the taxable benefit of the Settlement Consideration, or if Defendants are required to pay any taxes, interest or penalties owed as a result of any payment made by Defendants to or on behalf of the Party or Parties receiving the taxable benefit of the Settlement Consideration, and/or if Defendants incur any costs or fees, including attorneys' fees, as a result of any taxes, interest, or penalties owed by or with regard to payments to the Party or Parties receiving the taxable benefit of the Settlement Consideration.

8.    Confidentiality.  Claimant agrees that neither Claimant nor anyone acting on Claimant's behalf, including Claimant's counsel, will disclose to anyone the terms of this Agreement, either specifically or in general, in qualitative or descriptive terms or in terms that state or suggest that the settlement was favorable to either Party and agrees that the only comment with respect to this settlement shall be that the matter was settled; provided, however, that Claimant may reveal the terms of this Agreement to any accountant Claimant may retain with respect to tax advice or reporting or any attorney hired to represent Claimant, to any federal or state taxing authority, or as otherwise required by law; and Claimant shall instruct such accountants or attorneys that the terms of this Agreement are confidential and are to be maintained as such. If Claimant or Claimant's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Claimant shall notify

4

Defendants, in writing, at least fifteen (15) days prior to such disclosure. Notice to Defendants shall be sent addressed to General Counsel, GMAC Mortgage, LLC, Legal Staff, 1100 Virginia Drive, Fort Washington, PA 19034. Claimant recognizes and agrees that any violation of this Paragraph 8 by Claimant constitutes a breach of this Agreement entitling Defendants to damages and payment by Claimant of any and all of the Defendants' attorneys' fees incurred in successfully prosecuting any action against Claimant for such breach of this Paragraph 8.

9.     Failure of Purpose. This Agreement is entered into only for purposes of settlement. In the event that this Agreement is not fully executed within one hundred and eighty (180) days of the Date of Agreement for any reason, this Agreement shall become null and void at the option of any Party. Notice of such nullification option shall be given only in writing to the address(es) below by the nullifying Party to the other Parties and shall be effective when received. In that event, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose. Any Settlement Consideration shall be returned. In addition, the status of the Action shall revert to the status it was in prior to settlement, and the Parties shall have all rights, claims and defenses that they had or were asserting prior to this Agreement. **Notwithstanding anything in this Agreement to the contrary, if Claimant fails to comply with Paragraph 2b, then Claimant agrees to release Defendants from any and all obligations under this Agreement.**

10.     No Admission of Liability. This Agreement is not in any way an admission or concession of the truth of any allegation by any Party, the validity of any claim asserted in the Action, or any fault on the part of any Party, nor should this Agreement be construed otherwise. Any and all such allegations are expressly denied.

11.     Final and Binding Agreement. The Parties for and on behalf of their respective Releasor and Releasees represent that they have fully read and understood this Agreement and acknowledge that this Agreement is final and binding on them and on their respective Releasor and Releasees.

5

12.     Knowing and Voluntary Agreement. The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement, and that they consider this Agreement to be fair and reasonable.

13.     Waivers. The Parties acknowledge and agree that the released claims include all claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected, which might or could have been asserted in the Action and that the Parties may hereafter discover facts different from or in addition to, those which they now know, or believe to be true with respect to the released claims identified herein. Nevertheless, the Parties agree that the Agreement shall be and remain effective in all respects, notwithstanding such different or additional facts, or discovery thereof. Notwithstanding anything else in this Agreement to the contrary, nothing herein shall in any way change or affect the Loan or any of the terms or provisions of any documentation related thereto unless expressly otherwise provided for herein.

14.     Construction of Agreement. Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the Court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction that a document is to be construed more strictly against the Party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

15.     Complete Agreement. The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

16.     Severability. Except for Paragraphs 2 and 3, the paragraphs of this Agreement are severable. A finding that any particular paragraph of this Agreement is

6

invalid and/or unenforceable shall not affect the validity or enforceability of the remaining provisions of the Agreement.

17. <u>Counterparts and Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, and with facsimile signatures, with the same effect as if all of the Parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement. If a facsimile signature is provided, the original copy of that signature will be sent via mail to the other Party or Parties. Absent an original signature, it is hereby understood and agreed that a facsimile signature shall be binding upon the Parties and otherwise admissible under the Best Evidence Rule.

18. <u>Governing Law and Jurisdiction</u>. This Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Ohio for purposes of resolving any disputes which may hereinafter arise under this Agreement.

19. <u>Use of Headings and Captions in Agreement</u>. The headings and captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

20. <u>Singular/Plural Interpretation.</u> References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

08-06091-rk    Doc 110    FILED 02/11/11    ENTERED 02/11/11 14:31:49    Page 13 of 38

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed under seal in several counterparts, each of which is an original as of the date first written above.

CLAIMANT

Dated: _____          _____
                                 Linda K. Burrage

STATE OF OHIO_____ )
                          :
COUNTY OF _____ )

I, the undersigned, a notary public in and for said county in said sate, hereby certify that Linda K. Burrage, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _____ day of October, 2010.

_____
Notary Public

Dated: _____          HOMECOMINGS FINANCIAL, LLC

                                 By:    _____


Dated: _____          GMAC MORTGAGE, LLC

                                 By:    _____


Dated: _____          JP MORGAN CHASE sbm BANK ONE, N.A..

                                 By:    _____
                                        Limited Signing Officer

261366

8



EXHIBIT

B

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between the Parties on the Date of Agreement, both as defined herein, and subject to the terms as follows:

### Definitions

**Date of Agreement**:  October 4, 2010

**Parties**:  **HFN**:  Homecomings Financial, LLC

**GMACM**  GMAC Mortgage, LLC

**JPM**:  JP Morgan Chase smb Bank One, NA

**Claimant**:  Linda K. Burrage

Unless otherwise expressly provided, the Claimant listed above shall be referred to as "Claimant." Unless otherwise expressly provided, HFN, GMACM and JPM shall be collectively referred to as "Defendants." The Claimant and the Defendants shall be collectively referred to as the "Parties."

**Releasor**: Claimant and her present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through her.

**Releasees**: Defendants and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf.

### Recitals

A.      Claimant has a mortgage loan (the "Loan") serviced previously by HFN and currently by GMACM on real property located at 302 Home Avenue, Mansfield, Ohio 44902 (the "Property").

B.      On August 6, 2008, Claimant initiated an adversary proceeding regarding the Loan and the Property against HFN and JPM in the United States Bankruptcy Court, Northern District of Ohio, Case No. 08-60915 (the "Action").

1

C. In order to avoid the cost and uncertainty of further litigation and trial, the Parties desire to compromise and settle the Action, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Action, the Loan, and the Property.

D. In consideration of the covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed to among the Parties as follows:

## TERMS

1. <u>Recitals</u>. The Recitals set forth above are incorporated herein by reference and are made a part of this Agreement.

2. <u>Settlement Consideration</u>.

    a. Defendants shall:

        i. Provide Claimant with a $10,000 credit on the outstanding principal balance of the Loan;

        ii. Provide Claimant a check in the amount of $7,000 upon receipt of an executed W-9 form from Claimant;

        iii. Remove all outstanding charges on the Loan, other than principal, interest and escrow charges accruing and due and owing through January 2011, and deem the Loan current as of January 31, 2011; and

        iv. Amend Claimant's credit report to reflect Claimant was current through January 2011 and for all subsequent months for which Claimant was current, but not shown to be current, and provide Claimant a letter confirming same.

    b. Claimant shall:

        i. Release Defendants as provided for in Paragraph 3;

        ii. Dismiss with prejudice the Action by signing an stipulation of dismissal, with each party to bear its own costs and attorney fees.

    c. The maturity date of the Loan is unchanged.

2

3. <u>Releases.</u> Releasor, hereby unconditionally and irrevocably remise, release and forever discharge Releasees from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Loan, the Property, and the Action and/or the servicing or administration of such Loan that may be pending or that may be satisfied.

**NOTWITHSTANDING THE ABOVE, THE PARTIES AGREE TO THE FOLLOWING RESERVATIONS AND EXCLUSIONS TO THE RELEASE.**

Nothing in this Agreement shall be interpreted to apply to (a) claims arising out of the failure of the Parties to perform in conformity with the terms of this Agreement; (b) any future disputes between the Parties which arise out of any business transactions between the Parties including the Loan; and (c) extend the releases and discharges derivative from this Agreement to any business transaction or any such relationship of any kind whatsoever other than the Loan, the Property, and the Action as defined herein whether involving any of the businesses or individuals defined as Releasor and Releasees or any one of such defined classes of persons or business entities.

4. <u>Covenant Not to Sue</u>. The Parties covenant not to sue, institute, cause to be instituted, permit to be instituted on his/her/their/its behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any claim against the respective Releasor and Releasees that is covered by this Agreement.

5. <u>Transactional Release.</u> To the extent any claims arise in connection with entering into this Agreement, Releasor agrees to waive and release those claims, including, but not limited to, claims arising under Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Home Ownership and Equity Protection Act (HOEPA), and/or any state lending laws and regulations in consideration for the execution of this Agreement.

3

6. <u>Tax Indemnity</u>. The Agreement is enforceable regardless of the taxability of the Settlement Consideration as set forth above at Paragraph 2 or any portion thereof. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to be solely responsible for the taxes, interest, and penalties due and owing, if any, should the Settlement Consideration, or any portion thereof, be determined as taxable and the Party or Parties receiving the taxable benefit of the Settlement Consideration fails or Plaintiffs are alleged to have failed to pay any such taxes. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to indemnify Defendants if Defendants are required to pay any taxes, interest, or penalties owed by the Party or Parties receiving the taxable benefit of the Settlement Consideration, or if Defendants are required to pay any taxes, interest or penalties owed as a result of any payment made by Defendants to or on behalf of the Party or Parties receiving the taxable benefit of the Settlement Consideration, and/or if Defendants incur any costs or fees, including attorneys' fees, as a result of any taxes, interest, or penalties owed by or with regard to payments to the Party or Parties receiving the taxable benefit of the Settlement Consideration.

7. **Confidentiality.** **Claimant agrees that neither Claimant nor anyone acting on Claimant's behalf, including Claimant's counsel, will disclose to anyone the terms of this Agreement, either specifically or in general, in qualitative or descriptive terms or in terms that state or suggest that the settlement was favorable to either Party and agrees that the only comment with respect to this settlement shall be that the matter was settled; provided, however, that Claimant may reveal the terms of this Agreement to any accountant Claimant may retain with respect to tax advice or reporting or any attorney hired to represent Claimant, to any federal or state taxing authority, to an attorney for the purpose of pursuing an attorney malpractice claim, or as otherwise required by law; and Claimant shall instruct such accountants or attorneys that the terms of this Agreement are confidential and are to be maintained as such. If Claimant or Claimant's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Claimant shall notify Defendants, in writing, at least fifteen (15) days prior to such disclosure. Notice to Defendants shall**

4

be sent addressed to General Counsel, GMAC Mortgage, LLC, Legal Staff, 1100 Virginia Drive, Fort Washington, PA 19034. **Claimant recognizes and agrees that any violation of this Paragraph 7 by Claimant constitutes a breach of this Agreement entitling Defendants to damages and payment by Claimant of any and all of the Defendants' attorneys' fees incurred in successfully prosecuting any action against Claimant for such breach of this Paragraph 7.**

8. <u>Failure of Purpose</u>. This Agreement is entered into only for purposes of settlement. In the event that this Agreement is not fully executed within thirty (30) days of the Date of Agreement for any reason, this Agreement shall become null and void at the option of any Party. Notice of such nullification option shall be given only in writing to the address(es) below by the nullifying Party to the other Parties and shall be effective when received. In that event, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose. Any Settlement Consideration shall be returned. In addition, the status of the Action shall revert to the status it was in prior to settlement, and the Parties shall have all rights, claims and defenses that they had or were asserting prior to this Agreement. **Notwithstanding anything in this Agreement to the contrary, if Claimant fails to comply with Paragraph 2b, then Claimant agrees to release Defendants from any and all obligations under this Agreement.**

9. <u>No Admission of Liability</u>. This Agreement is not in any way an admission or concession of the truth of any allegation by any Party, the validity of any claim asserted in the Action, or any fault on the part of any Party, nor should this Agreement be construed otherwise. Any and all such allegations are expressly denied.

10. <u>Final and Binding Agreement</u>. The Parties for and on behalf of their respective Releasor and Releasees represent that they have fully read and understood this Agreement and acknowledge that this Agreement is final and binding on them and on their respective Releasor and Releasees.

5

11.   Knowing and Voluntary Agreement.   The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement.

12.   Waivers.   The Parties acknowledge and agree that the released claims include all claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected, which might or could have been asserted in the Action and that the Parties may hereafter discover facts different from or in addition to, those which they now know, or believe to be true with respect to the released claims identified herein. Nevertheless, the Parties agree that the Agreement shall be and remain effective in all respects, notwithstanding such different or additional facts, or discovery thereof. Notwithstanding anything else in this Agreement to the contrary, nothing herein shall in any way change or affect the Loan or any of the terms or provisions of any documentation related thereto unless expressly otherwise provided for herein.

13.   Construction of Agreement.   Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the Court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction that a document is to be construed more strictly against the Party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

14.   Complete Agreement.   The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

15.   Severability.   Except for Paragraphs 2 and 3, the paragraphs of this Agreement are severable. A finding that any particular paragraph of this Agreement is invalid and/or unenforceable shall not affect the validity or enforceability of the remaining provisions of the Agreement.

6

16.     Counterparts and Facsimile Signatures.  This Agreement may be executed in any number of counterparts, and with facsimile signatures, with the same effect as if all of the Parties hereto had signed the same document.  All counterparts shall be construed together and shall constitute one agreement.  If a facsimile signature is provided, the original copy of that signature will be sent via mail to the other Party or Parties.  Absent an original signature, it is hereby understood and agreed that a facsimile signature shall be binding upon the Parties and otherwise admissible under the Best Evidence Rule.

17.     Governing Law and Jurisdiction.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Ohio for purposes of resolving any disputes which may hereinafter arise under this Agreement.

18.     Use of Headings and Captions in Agreement.  The headings and captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

20.     Singular/Plural Interpretation.  References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed under seal in several counterparts, each of which is an original as of the date first written above.

08-06091-rk     Doc 110     FILED 02/11/11     ENTERED 02/11/11 14:31:49     Page 21 of 38

CLAIMANT

Dated: _____          _____
                                Linda K. Burrage


STATE OF OHIO_____ )
                            :
COUNTY OF _____ )

     I, the undersigned, a notary public in and for said county in said sate, hereby certify that Linda K. Burrage, whose name is signed to the foregoing instrument, and who

is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

     Given under my hand and official seal this _____ day of _____.

                                _____
                                Notary Public


Dated: _____          HOMECOMINGS FINANCIAL, LLC

                                By: _____


Dated: _____          GMAC MORTGAGE, LLC

                                By: _____


Dated: _____          JP MORGAN CHASE sbm BANK ONE, N.A..

                                By: _____
                                    Limited Signing Officer


8


## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between the Parties on the Date of Agreement, both as defined herein, and subject to the terms as follows:

### Definitions

**Date of Agreement:**  October 4, 2010

**Parties:**  **HFN:**  Homecomings Financial, LLC

**GMACM**  GMAC Mortgage, LLC

**JPM:**  JP Morgan Chase smb Bank One, NA

**Claimant:**  Linda K. Burrage

Unless otherwise expressly provided, the Claimant listed above shall be referred to as "Claimant." Unless otherwise expressly provided, HFN, GMACM and JPM shall be collectively referred to as "Defendants." The Claimant and the Defendants shall be collectively referred to as the "Parties."

**Releasor:** Claimant and her present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through her.

**Releasees:** Defendants and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf.

### Recitals

A.    Claimant has a mortgage loan (the "Loan") serviced previously by HFN and currently by GMACM on real property located at 302 Home Avenue, Mansfield, Ohio 44902 (the "Property").

B.    On August 6, 2008, Claimant initiated an adversary proceeding regarding the Loan and the Property against HFN and JPM in the United States Bankruptcy Court, Northern District of Ohio, Case No. 08-6091, (the "Action").

Deleted: s

1

C. In order to avoid the cost and uncertainty of further litigation and trial, the Parties desire to compromise and settle the Action, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Action, the Loan, and the Property.

D. In consideration of the covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed to among the Parties as follows:

**TERMS**

1. <u>Recitals</u>. The Recitals set forth above are incorporated herein by reference and are made a part of this Agreement.

2. <u>Settlement Consideration</u>.

    a. Defendants shall:

        i. Provide Claimant with a $10,000 credit on the outstanding principal balance of the Loan;

        ii. Provide Claimant a check in the amount of $7,000 upon receipt of an executed W-9 form from Claimant;

        iii. Remove all outstanding charges on the Loan, other than principal, interest and escrow charges accruing and due and owing through January 2011, and deem the Loan current as of January 31, 2011; and

        iv. Amend Claimant's credit report to reflect Claimant was current through January 2011 and for all subsequent months for which Claimant was current, but not shown to be current, and provide Claimant a letter confirming same.

    b. Claimant shall:

        i. Release Defendants as provided for in Paragraph 3;

        ii. Dismiss with prejudice the Action by signing an stipulation of dismissal, with each party to bear its own costs and attorney fees.

    c. The maturity date of the Loan is unchanged.

2

3.    Releases.    Releasor, hereby unconditionally and irrevocably remise, release and forever discharge Releasees from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Loan, the Property, and the Action and/or the servicing or administration of such Loan that may be pending or that may be satisfied.

NOTWITHSTANDING THE ABOVE, THE PARTIES AGREE TO THE FOLLOWING RESERVATIONS AND EXCLUSIONS TO THE RELEASE.

Nothing in this Agreement shall be interpreted to apply to (a) claims arising out of the failure of the Parties to perform in conformity with the terms of this Agreement; (b) any future disputes between the Parties which arise out of any business transactions between the Parties including the Loan; and (c) extend the releases and discharges derivative from this Agreement to any business transaction or any such relationship of any kind whatsoever other than the Loan, the Property, and the Action as defined herein whether involving any of the businesses or individuals defined as Releasor and Releasees or any one of such defined classes of persons or business entities.

4.    Covenant Not to Sue.    The Parties covenant not to sue, institute, cause to be instituted, permit to be instituted on his/her/their/its behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any claim against the respective Releasor and Releasees that is covered by this Agreement.

5.    Transactional Release.    To the extent any claims arise in connection with entering into this Agreement, Releasor agrees to waive and release those claims, including, but not limited to, claims arising under Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Home Ownership and Equity Protection Act (HOEPA), and/or any state lending laws and regulations in consideration for the execution of this Agreement.

3

6.   Tax Indemnity.  The Agreement is enforceable regardless of the taxability of the Settlement Consideration as set forth above at Paragraph 2 or any portion thereof. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to be solely responsible for the taxes, interest, and penalties due and owing, if any, should the Settlement Consideration, or any portion thereof, be determined as taxable and the Party or Parties receiving the taxable benefit of the Settlement Consideration fails or Plaintiffs are alleged to have failed to pay any such taxes.  The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to indemnify Defendants if Defendants are required to pay any taxes, interest, or penalties owed by the Party or Parties receiving the taxable benefit of the Settlement Consideration, or if Defendants are required to pay any taxes, interest or penalties owed as a result of any payment made by Defendants to or on behalf of the Party or Parties receiving the taxable benefit of the Settlement Consideration, and/or if Defendants incur any costs or fees, including attorneys' fees, as a result of any taxes, interest, or penalties owed by or with regard to payments to the Party or Parties receiving the taxable benefit of the Settlement Consideration.

7.   **Confidentiality.**  Claimant agrees that neither Claimant nor anyone acting on Claimant's behalf, including Claimant's counsel, will disclose to anyone the terms of this Agreement, either specifically or in general, in qualitative or descriptive terms or in terms that state or suggest that the settlement was favorable to either Party and agrees that the only comment with respect to this settlement shall be that the matter was settled; provided, however, that Claimant may reveal the terms of this Agreement to any accountant Claimant may retain with respect to tax advice or reporting or any attorney hired to represent Claimant, to any federal or state taxing authority, to an attorney for the purpose of pursuing an attorney malpractice claim, or as otherwise required by law; and Claimant shall instruct such accountants or attorneys that the terms of this Agreement are confidential and are to be maintained as such.  If Claimant or Claimant's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Claimant shall notify Defendants, in writing, at least fifteen (15) days prior to such disclosure. Notice to Defendants shall

4

be sent addressed to General Counsel, GMAC Mortgage, LLC, Legal Staff, 1100 Virginia Drive, Fort Washington, PA 19034. Claimant recognizes and agrees that any violation of this Paragraph 7 by Claimant constitutes a breach of this Agreement entitling Defendants to damages and payment by Claimant of any and all of the Defendants' attorneys' fees incurred in successfully prosecuting any action against Claimant for such breach of this Paragraph 7.

8. **No Admission of Liability.** This Agreement is not in any way an admission or concession of the truth of any allegation by any Party, the validity of any claim asserted in the Action, or any fault on the part of any Party, nor should this Agreement be construed otherwise. Any and all such allegations are expressly denied.

9. **Final and Binding Agreement.** The Parties for and on behalf of their respective Releasor and Releasees represent that they have fully read and understood this Agreement and acknowledge that this Agreement is final and binding on them and on their respective Releasor and Releasees.

10. **Knowing and Voluntary Agreement.** The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement.

11. **Waivers.** The Parties acknowledge and agree that the released claims include all claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected, which might or could have been asserted in the Action and that the Parties may hereafter discover facts different from or in addition to, those which they now know, or believe to be true with respect to the released claims identified herein. Nevertheless, the Parties agree that the Agreement shall be and remain effective in all respects, notwithstanding such different or additional facts, or discovery thereof. Notwithstanding anything else in this Agreement to the contrary, nothing herein shall in any way change or affect the Loan or any of the terms or provisions of any documentation related thereto unless expressly otherwise provided for herein.

12. **Construction of Agreement.** Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the Court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction

5

**Deleted:** <#>Failure of Purpose  This Agreement is entered into only for purposes of settlement.  In the event that this Agreement is not fully executed within thirty (30) days of the Date of Agreement for any reason, this Agreement shall become null and void at the option of any Party  Notice of such nullification option shall be given only in writing to the address(es) below by the nullifying Party to the other Parties and shall be effective when received  In that event, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, or any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose  Any Settlement Consideration shall be returned  In addition, the status of the Action shall revert to the status it was in prior to settlement, and the Parties shall have all rights, claims and defenses that they had or were asserting prior to this Agreement  **Notwithstanding anything in this Agreement to the contrary, if Claimant fails to comply with Paragraph 2b, then Claimant agrees to release Defendants from any and all obligations under this Agreement.** ¶

**Formatted:** Bullets and Numbering

that a document is to be construed more strictly against the Party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

13. Complete Agreement. The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

14. Severability. Except for Paragraphs 2 and 3, the paragraphs of this Agreement are severable. A finding that any particular paragraph of this Agreement is invalid and/or unenforceable shall not affect the validity or enforceability of the remaining provisions of the Agreement.

15. Counterparts and Facsimile Signatures. This Agreement may be executed in any number of counterparts, and with facsimile signatures, with the same effect as if all of the Parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement. If a facsimile signature is provided, the original copy of that signature will be sent via mail to the other Party or Parties. Absent an original signature, it is hereby understood and agreed that a facsimile signature shall be binding upon the Parties and otherwise admissible under the Best Evidence Rule.

16. Governing Law and Jurisdiction. This Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Ohio for purposes of resolving any disputes which may hereinafter arise under this Agreement.

17. Use of Headings and Captions in Agreement. The headings and captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

6

18. **Singular/Plural Interpretation.** References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed under seal in several counterparts, each of which is an original as of the date first written above.

7

CLAIMANT

Dated: _____          _____
                                  Linda K. Burrage


STATE OF OHIO_____  )
                          :
COUNTY OF _____  )

      I, the undersigned, a notary public in and for said county in said sate, hereby certify that Linda K. Burrage, whose name is signed to the foregoing instrument, and who

is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

      Given under my hand and official seal this _____ day of _____.

                                  _____
                                  Notary Public



Dated: _____     HOMECOMINGS FINANCIAL, LLC

                            By:     _____


Dated: _____     GMAC MORTGAGE, LLC

                            By:     _____


Dated: _____     JP MORGAN CHASE sbm BANK ONE, N.A.

                            By:     _____
                                    Limited Signing Officer



8



## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between the Parties on the Date of Agreement, both as defined herein, and subject to the terms as follows:

### Definitions

**Date of Agreement**:     October 4, 2010

**Parties**:  **HFN**:     Homecomings Financial, LLC

**GMACM**     GMAC Mortgage, LLC

**JPM**:     JP Morgan Chase smb Bank One, NA

**Claimant**:     Linda K. Burrage

Unless otherwise expressly provided, the Claimant listed above shall be referred to as "Claimant." Unless otherwise expressly provided, HFN, GMACM and JPM shall be collectively referred to as "Defendants." The Claimant and the Defendants shall be collectively referred to as the "Parties."

**Releasor**: Claimant and her present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through her.

**Releasees**: Defendants and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for them or on their behalf.

### Recitals

A.     Claimant has a mortgage loan (the "Loan") serviced previously by HFN and currently by GMACM on real property located at 302 Home Avenue, Mansfield, Ohio 44902 (the "Property").

B.     On August 6, 2008, Claimant initiated an adversary proceeding regarding the Loan and the Property against HFN and JPM in the United States Bankruptcy Court, Northern District of Ohio, Case No. 08-6091 (the "Action").

1

C.     In order to avoid the cost and uncertainty of further litigation and trial, the Parties desire to compromise and settle the Action, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Action, the Loan, and the Property.

D.     In consideration of the covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed to among the Parties as follows:

## TERMS

1.     <u>Recitals</u>. The Recitals set forth above are incorporated herein by reference and are made a part of this Agreement.

2.     <u>Settlement Consideration</u>.

    a.  Defendants shall:

        i.  Provide Claimant with a $10,000 credit on the outstanding principal balance of the Loan;

        ii.  Provide Claimant a check in the amount of $7,000 upon receipt of an executed W-9 form from Claimant;

        iii.  Remove all outstanding charges on the Loan, other than principal, interest and escrow charges accruing and due and owing through January 2011, and deem the Loan current as of January 31, 2011; and

        iv.  Amend Claimant's credit report to reflect Claimant was current through January 2011 and for all subsequent months for which Claimant was current, but not shown to be current, and provide Claimant a letter confirming same.

    b.  Claimant shall:

        i.  Release Defendants as provided for in Paragraph 3;

        ii.  Dismiss with prejudice the Action by signing an stipulation of dismissal, with each party to bear its own costs and attorney fees.

    c.  The maturity date of the Loan is unchanged.

2

3. <u>Releases.</u>  Releasor, hereby unconditionally and irrevocably remise, release and forever discharge Releasees from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Loan, the Property, and the Action and/or the servicing or administration of such Loan that may be pending or that may be satisfied.

<u>**NOTWITHSTANDING THE ABOVE, THE PARTIES AGREE TO THE FOLLOWING RESERVATIONS AND EXCLUSIONS TO THE RELEASE**</u>.

Nothing in this Agreement shall be interpreted to apply to (a) claims arising out of the failure of the Parties to perform in conformity with the terms of this Agreement; (b) any future disputes between the Parties which arise out of any business transactions between the Parties including the Loan; and (c) extend the releases and discharges derivative from this Agreement to any business transaction or any such relationship of any kind whatsoever other than the Loan, the Property, and the Action as defined herein whether involving any of the businesses or individuals defined as Releasor and Releasees or any one of such defined classes of persons or business entities.

4. <u>Covenant Not to Sue</u>.  The Parties covenant not to sue, institute, cause to be instituted, permit to be instituted on his/her/their/its behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any claim against the respective Releasor and Releasees that is covered by this Agreement.

5. <u>Transactional Release</u>.  To the extent any claims arise in connection with entering into this Agreement, Releasor agrees to waive and release those claims, including, but not limited to, claims arising under Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Home Ownership and Equity Protection Act (HOEPA), and/or any state lending laws and regulations in consideration for the execution of this Agreement.

3

6.    Tax Indemnity.  The Agreement is enforceable regardless of the taxability of the Settlement Consideration as set forth above at Paragraph 2 or any portion thereof. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to be solely responsible for the taxes, interest, and penalties due and owing, if any, should the Settlement Consideration, or any portion thereof, be determined as taxable and the Party or Parties receiving the taxable benefit of the Settlement Consideration fails or Plaintiffs are alleged to have failed to pay any such taxes.  The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to indemnify Defendants if Defendants are required to pay any taxes, interest, or penalties owed by the Party or Parties receiving the taxable benefit of the Settlement Consideration, or if Defendants are required to pay any taxes, interest or penalties owed as a result of any payment made by Defendants to or on behalf of the Party or Parties receiving the taxable benefit of the Settlement Consideration, and/or if Defendants incur any costs or fees, including attorneys' fees, as a result of any taxes, interest, or penalties owed by or with regard to payments to the Party or Parties receiving the taxable benefit of the Settlement Consideration.

7.    **Confidentiality.  Claimant agrees that neither Claimant nor anyone acting on Claimant's behalf, including Claimant's counsel, will disclose to anyone the terms of this Agreement, either specifically or in general, in qualitative or descriptive terms or in terms that state or suggest that the settlement was favorable to either Party and agrees that the only comment with respect to this settlement shall be that the matter was settled; provided, however, that Claimant may reveal the terms of this Agreement to any accountant Claimant may retain with respect to tax advice or reporting or any attorney hired to represent Claimant, to any federal or state taxing authority, to an attorney for the purpose of pursuing an attorney malpractice claim, or as otherwise required by law; and Claimant shall instruct such accountants or attorneys that the terms of this Agreement are confidential and are to be maintained as such.  If Claimant or Claimant's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Claimant shall notify Defendants, in writing, at least fifteen (15) days prior to such disclosure. Notice to Defendants shall**

4

be sent addressed to General Counsel, GMAC Mortgage, LLC, Legal Staff, 1100 Virginia Drive, Fort Washington, PA 19034. Claimant recognizes and agrees that any violation of this Paragraph 7 by Claimant constitutes a breach of this Agreement entitling Defendants to damages and payment by Claimant of any and all of the Defendants' attorneys' fees incurred in successfully prosecuting any action against Claimant for such breach of this Paragraph 7.

8.  <u>No Admission of Liability</u>.  This Agreement is not in any way an admission or concession of the truth of any allegation by any Party, the validity of any claim asserted in the Action, or any fault on the part of any Party, nor should this Agreement be construed otherwise.  Any and all such allegations are expressly denied.

9.  <u>Final and Binding Agreement</u>.  The Parties for and on behalf of their respective Releasor and Releasees represent that they have fully read and understood this Agreement and acknowledge that this Agreement is final and binding on them and on their respective Releasor and Releasees.

10.  <u>Knowing and Voluntary Agreement</u>.  The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement.

11.  <u>Waivers</u>.  The Parties acknowledge and agree that the released claims include all claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected, which might or could have been asserted in the Action and that the Parties may hereafter discover facts different from or in addition to, those which they now know, or believe to be true with respect to the released claims identified herein. Nevertheless, the Parties agree that the Agreement shall be and remain effective in all respects, notwithstanding such different or additional facts, or discovery thereof. Notwithstanding anything else in this Agreement to the contrary, nothing herein shall in any way change or affect the Loan or any of the terms or provisions of any documentation related thereto unless expressly otherwise provided for herein.

12.  <u>Construction of Agreement</u>.  Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the Court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction

5

that a document is to be construed more strictly against the Party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

13.    Complete Agreement. The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

14.    Severability. Except for Paragraphs 2 and 3, the paragraphs of this Agreement are severable. A finding that any particular paragraph of this Agreement is invalid and/or unenforceable shall not affect the validity or enforceability of the remaining provisions of the Agreement.

15.    Counterparts and Facsimile Signatures. This Agreement may be executed in any number of counterparts, and with facsimile signatures, with the same effect as if all of the Parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement. If a facsimile signature is provided, the original copy of that signature will be sent via mail to the other Party or Parties. Absent an original signature, it is hereby understood and agreed that a facsimile signature shall be binding upon the Parties and otherwise admissible under the Best Evidence Rule.

16.    Governing Law and Jurisdiction. This Agreement shall be construed and interpreted in accordance with the laws of the State of Ohio and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Ohio for purposes of resolving any disputes which may hereinafter arise under this Agreement.

17.    Use of Headings and Captions in Agreement. The headings and captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

6

18. <u>Singular/Plural Interpretation.</u>  References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed under seal in several counterparts, each of which is an original as of the date first written above.

7

CLAIMANT

Dated: _____          _____
                                 Linda K. Burrage


STATE OF OHIO_____ )
                        :
COUNTY OF _____ )

    I, the undersigned, a notary public in and for said county in said sate, hereby certify that Linda K. Burrage, whose name is signed to the foregoing instrument, and who

is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this ____ day of _____.

                                 _____
                                 Notary Public


Dated: _____          HOMECOMINGS FINANCIAL, LLC

                                 By: _____


Dated: _____          GMAC MORTGAGE, LLC

                                 By: _____


Dated: _____          JP MORGAN CHASE sbm BANK ONE, N.A..

                                 By: _____
                                 Limited Signing Officer

8